# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD AULD,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>MARGARET DEEL, et al.,<br><br>　　　　　　　　Defendants. | Case No.: 16-cv-2276-H-NLS<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM; and**<br><br>**(2) DISMISSING WITHOUT PREJUDICE PLAINTIFF'S PROFESSIONAL NEGLIGENCE CLAIM**<br><br>[Doc. No. 29] |

On November 10, 2016, Plaintiff Ronald Auld ("Plaintiff"), a former inmate at Richard J. Donovan Correctional Facility ("RJDCF") who is represented by counsel, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to a serious medical need in violation of the Eighth Amendment and professional negligence. (Doc. No. 5.) On December 22, 2017, Defendants Margaret Deel, M.D., Neha Nayyar, M.D., T. Luu, M.D., Avelino Canles, M.D., and Steve Boucher (collectively,

"Defendants"), moved for summary judgment on the grounds that no triable issue of material fact exists with respect to Plaintiff's deliberate indifference claim or Plaintiff's state law professional negligence claim, and that they are entitled to qualified immunity as to the deliberate indifference claim. (Doc. No. 29.) On January 22, 2018, Plaintiff opposed the motion. (Doc. No. 32.) On January 29, 2018, Defendants replied. (Doc. No. 35.)

On February 5, 2018, the Court held a hearing on the motion. (Doc. No. 39.) Chijioke Ikonte appeared telephonically for Plaintiff, and Edward P. Wolfe appeared for Defendants. (Id.) For the reasons discussed below, the Court grants Defendants' motion for summary judgment that they were not deliberately indifferent to Plaintiff's serious medical needs.

## BACKGROUND

On October 4, 2013, Plaintiff entered the custody of the California Department of Corrections and Rehabilitation ("CDCR"). (Doc. No. 29-2, Wolfe Decl. ("Wolfe Decl.") ¶ 3.) Over the course of his custody, Plaintiff was treated for a variety of medical conditions, including a seizure disorder, diabetes, asthma, obesity, COPD, as well as abdominal and skin complaints. (Doc. No. 29-3, Feinberg Decl. ("Feinberg Decl.") Ex. 3.) In November 2013, Plaintiff observed a growth in his body that he believed to be a hernia. (Doc. No. 33, Auld Decl. ("Auld Decl.") ¶ 5.) On November 28, 2013, while housed at North Kern State Prison ("NKSP"), Plaintiff submitted two Health Care Services Request Form 7362 ("Form 7362"), which are documents CDCR inmates submit to request medical services. (Feinberg Decl. ¶¶ 8, 9.) Because Plaintiff cannot read or write, he relied on the assistance of others—usually a fellow inmate—to submit CDCR forms like the Form 7362. (Auld Decl. ¶¶ 2-3.) On that particular occasion, Plaintiff complained of having a hernia and constipation. (Feinberg Decl. ¶ 9; Doc. No. 34, Taylor Decl. ("Taylor Decl.") ¶ 7.) The treating physician, Dr. Krzysiak, who is not a party to this case, noted that Plaintiff's abdomen was "tender all over" and concluded that no hernia was present. (Feinberg Decl. ¶ 10, Ex. 2; Taylor Decl. ¶ 7.) Dr. Krzysiak did not note any bump or other abnormality. (Feinberg Decl. ¶ 10, Ex. 2.) During his stay at NKSP, Plaintiff had several other medical

examinations performed by NKSP medical personnel who are not parties to this suit. (Id. ¶ 11.) All abdominal examinations were normal, and none of those examinations were related to any complaint of a hernia or a lump or swelling in Plaintiff's groin. (Id.)

On March 20, 2014, Plaintiff was transferred to RJDCF in San Diego, where he remained until his release on parole on October 27, 2015. (Wolfe Decl. ¶ 3.) The Defendants were RJDCF medical personnel during Plaintiff's stay at that facility. On May 13, 2014, Plaintiff was seen by Dr. John Chau[1] for a laceration to his left hand, as well as "a little lesion on his left inguinal area." (Feinberg Decl. Ex. 4.) Plaintiff was diagnosed with folliculitis, which was treated with antibiotics. (Id.) Plaintiff was ordered to follow up with Dr. Chau after two weeks. (Id.) The treatment notes for Plaintiff's follow-up appointment with Dr. Chau on June 26, 2014, and his appointment with Dr. Sarah Ghayouri on July 9, 2014, do not reference any further complaints stemming from Plaintiff's inguinal area. (Id. Ex. 5.)

On February 2, 2015, Plaintiff saw Defendant Avelino Canles, M.D. ("Dr. Canles"), for a follow-up appointment regarding a recent seizure. (Feinberg Decl. Ex. 6.) Dr. Canles noted a "[s]car on left inguinal area from excision of an apparent lipoma." (Id.) Although Plaintiff was concerned the scar was a hernia, "[h]e was reassured that it was not." (Id.) Dr. Canles described Plaintiff's abdomen as "[b]enign, soft, obese." (Id.)

On April 17, 2015, Plaintiff was seen by Defendant Margaret Deel, M.D. ("Dr. Deel"), regarding a shoulder injury and possible seizure and chest pains. (Id. Ex. 7.) The Medical Progress Note for that appointment includes no mention of any complaint related to a lump or growth, and the abdominal examination was normal. (Id.) On April 30, 2017, Plaintiff was seen by Dr. Deel again regarding the shoulder injury. (Id.) The Medical Progress Note includes no mention of any complaint related to a lump or growth. (Id.)

On May 12, 2015, Plaintiff submitted a Form 7362 stating "Id [sic] like to see a doctor. I have a lump on my left lower side of my stomach." (Id. Ex. 8.) Defendant Steve

---

[1] Dr. Chau is not a defendant in the case. (Feinberg Decl. ¶ 12.)

Boucher ("Nurse Boucher") saw Plaintiff on May 15, 2015. (Id.) His notes do not indicate that he found a lump on Plaintiff's lower left abdomen. (Id.) Upon examination, Nurse Boucher noted "skin irritation due to skin rubbing against skin," "slight erythema," and "risk for infection."[2] (Id.) He wrote on the Form 7362 that he gave Plaintiff reassurance, prescribed a 10-day course of antibiotics, and advised Plaintiff to seek medical attention if he experienced increased pain, fever, redness, discharge, or swelling. (Id.) Nurse Boucher also documented that Plaintiff expressed understanding of these instructions in his own words. (Id.)

A few days later, on May 19, 2015, Plaintiff submitted another Form 7362 stating that he had bumped his head and it was bleeding. (Id.) Nurse Boucher saw Plaintiff the same day. (Id.) Nurse Boucher's notes from his assessment of Plaintiff contain no mention of any complaint related to a lump. (Id.) Nurse Boucher gave Plaintiff reassurance and advised Plaintiff to seek medical attention if he experienced redness, fever, bleeding, or any issue of concern. (Id.)

On May 21, 2015, Plaintiff was seen by Dr. Deel for a follow-up appointment regarding shoulder and neck pain. (Id. Ex. 9.) Dr. Deel noted that Plaintiff's abdomen was soft, with positive bowel sounds, non-tender, and without "rebound or guarding." (Id.) Dr. Deel also noted that Plaintiff "had no specific questions and answered all questions appropriately." (Id.) The Medical Progress Note for the appointment contains no mention of any complaint regarding a lump. (Id.)

On June 8, 2015, Plaintiff was again seen by Dr. Deel after complaining of a sore throat, congestion, and cough. (Id.) Dr. Deel noted that Plaintiff's abdomen was soft, with positive bowel sounds, non-tender, and without "rebound or guarding." (Id.) Plaintiff "asked questions and had all his questions answered." (Id.) The Medical Progress Note for the appointment contains no mention of any complaint regarding a lump. (Id.)

---

[2] Based on Plaintiff's height and weight at that time, he was morbidly obese. (Feinberg Decl. ¶ 17.) It is not unusual for a morbidly obese man to have skinfolds rub against each other and become irritated, particularly in the lower abdomen area. (Id.)

Plaintiff "recalls[s] discussing with the treating doctors" his concern about the "tumor and how it was progressively getting bigger and was becoming more painful." (Auld Decl. ¶ 6.) He does not identify any of the "treating doctors" by name or when those discussions allegedly took place. (See id.) He stated in his deposition that he doesn't remember any of the doctors because "nobody told [him] their name," but he "just knew they [were] a doctor." (Wolfe Decl. Ex. 4 at RT 50:4-7.) He also stated in his deposition that a male doctor told him the "bump" was "not supposed to be there and it [was] going to have to get moved, but they have to find out what it is." (Id. at RT 50:16-22.) Plaintiff has not provided the name of the "male doctor" or the date when that comment was allegedly made. Additionally, Plaintiff alleges that he "was having difficulties walking" due to pain from the tumor and that, as a result, he was given a walker, which he used sometimes. (Auld Decl. ¶¶ 6, 9.) Plaintiff offers no further information or documentation regarding the walker, and it is unclear who gave it to him and when.

On June 14, 2015, Plaintiff submitted a Form 7362 requesting to see a physician due to "swelling in the groin area." (Feinberg Decl. Ex. 10.) Two days later, he was seen by Nurse Boucher, who wrote that Plaintiff was complaining of swelling on his left side under his "belly fold." (Id.) Nurse Boucher identified skin irritation on Plaintiff's left side, but not in his groin area, caused by belly fat "hang[ing] over" and "mak[ing] a skin fold" with a "colloid like skin growth on healed skin/scar from incident 1-2 yrs ago." (Id.) He gave Plaintiff reassurance and advised him to seek further medical attention if the pain or redness increased, and, according to Nurse Boucher's notes, Plaintiff "verbalized understanding." (Id.)

Plaintiff states in his declaration that he stopped complaining about the growth after Nurse Boucher assured him that nothing was wrong and "threatened to write [him] up with the consequence that [his] parole date may be extended" if he continued to complain about the growth. (Auld Decl. ¶ 7.) Plaintiff does not specify when Nurse Boucher made this statement. (See id.).

Roughly three months later, on September 11, 2015, Plaintiff was seen by Dr. Deel

regarding dizziness and nausea. (Feinberg Decl. Ex. 11.) Dr. Deel diagnosed Plaintiff with dehydration. (Id.) The Progress Note contains no mention of any complaint regarding a lump and indicates that Plaintiff's abdomen was soft. (Id.) On September 14, 2015, Plaintiff was seen by T. Luu, M.D. ("Dr. Luu"), for a follow-up regarding his recent dizziness and nausea as well as constipation. (Id.) Plaintiff had been feeling better, and he requested milk of magnesia for his constipation, which Dr. Luu provided. (Id.) The Progress Note contains no mention of any complaint regarding a lump and indicates that Plaintiff's abdomen was soft and non-tender. (Id.) Dr. Luu documented that he spoke to Plaintiff slowly and loudly, that Plaintiff understood and was agreeable with the treatment plan, and repeated the plan back to Dr. Luu. (Id.)

On October 2, 2015, Plaintiff submitted a Form 7362 requesting treatment for a broken toenail. (Id.) He was seen by Nurse Boucher five days later. (Id.) The medical notes contain no mention of any complaint regarding a lump, and instruct the Plaintiff to seek medical care if he was in "acute distress." (See id.)

On October 27, 2015, Plaintiff was released on parole, and on December 1, 2015, he came to Valley Presbyterian Hospital Emergency Room (the "ER") with several complaints, including a lump in his left abdomen. (Auld Decl. ¶ 8; Feinberg Decl. ¶ 21, Ex. 12.) According to the ER Discharge Summary, Plaintiff stated that the lump had been present for the past two days, had been growing in size, and caused a burning sensation. (Id. Ex. 12.) He also stated that the lump was in the area where he had had an abscess drained two months ago while in prison. (Id.) Plaintiff had no abdominal tenderness, but an examination identified a 3 x 6 cm mass on Plaintiff's left groin that "does not appear to be either abscess or cellulitis." (Id.) The treating nurse practitioner prescribed Plaintiff an antibiotic for possible cellulitis, "given his recent time in jail," and advised him to return in two days for a follow-up on the mass. (Id.)

On December 16, 2015, Plaintiff returned to the ER for evaluation of the mass. (Id. Ex. 13.) On that occasion, Plaintiff reported that the mass had been present for two months. (Id.) The abdominal examination was normal. (See id.) The treating physician believed the

mass was "likely a keloid formation" and that Plaintiff "should follow up with general surgery outpatient." (Id.)

On December 28, 2015, Plaintiff returned to the ER. (Id. Ex. 14.) He complained of a growing lump on his left lower abdomen that had been present for a month and a half, and he described "achy" pain radiating down his leg. (Id.) A physical examination identified a 4 x 5 cm mass on the left lower quadrant of Plaintiff's abdomen. (Id.) Plaintiff was instructed to call his primary care doctor to get a referral to a general surgeon for the lump's removal. (Id.)

On January 5, 2016, Plaintiff had a CT scan performed on his abdomen and pelvis, revealing a 3.7 x 3.4 cm round subcutaneous lesion of the left inguinal region. (Id. ¶ 24, Ex. 15; Taylor Decl. ¶ 12.) In early February 2016, Plaintiff had a core needle biopsy of the mass. (Feinberg Decl. Ex. 16.) The biopsy revealed a type of cancer known as dermatofibrosarcoma protuberans. (Id.) Dermatofibrosarcoma protuberans "is a rare type of cancer that rarely spreads to other parts of the body and has a high survival rate."[3] (Id. ¶ 26.) Dermatofibrosarcoma protuberans "is often mistaken for other skin conditions, particularly in its early stages, and is frequently diagnosed only after it has entered a rapid growth phase." (Feinberg Decl. ¶ 26.)

On February 29, 2016, Plaintiff underwent surgery to remove the mass. (Id. ¶ 25; Taylor Decl. ¶ 12.) The surgery successfully removed the entire mass without any evidence of spread.[4] (Feinberg Decl. ¶¶ 25, 29, Ex. 16.) Following surgery, Plaintiff was prescribed an oral chemotherapy medication. (Auld Decl. ¶ 8; Taylor Decl. ¶ 13.) Plaintiff states that "[p]rior to the removal of the tumor, I experienced a lot pain [sic] from it and sometimes

---

[3] Dermatofibrosarcoma protuberans causes a tumor that usually starts as a small, firm patch of skin that grows slowly and can become a raised nodule. Genetics Home Reference, Dermatofibrosarcoma protuberans, U.S. Nat'l Libr. Med. (Jan. 30, 2018), https://ghr.nlm.nih.gov/condition/dermatofibrosarcoma-protuberans. The tumors are usually found on the torso but can also be found on the arms, legs, head, or neck. (Id.)

[4] "The treatment for dermatofibrosarcoma protuberans is almost always surgical." (Feinberg Decl. ¶ 29.) Plaintiff's February 29, 2016 "successfully removed the entire mass without any evidence of spread," thus achieving "the best possible outcome for treatment of Plaintiff's condition." (Id.)

was unable to walk as a result of the pain. I no longer experience the pain after the tumor was removed." (Auld Decl. ¶ 9.)

## DISCUSSION

**I.       Legal Standards for Summary Judgment**

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only "if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015). A fact is material if, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "genuine" issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The party seeking summary judgment bears the burden of persuasion—that is, of establishing the absence of a genuine issue of material fact—as well as the burden of production. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim," or "show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire, 210 F.3d at 1102.

If the moving party carries its burden of production, then the non-moving party must set forth specific facts showing there is a genuine issue of material fact. Liberty Lobby, 477 U.S. at 248; Nissan Fire, 210 F.3d at 1103 (citing Celotex, 477 U.S. at 322). The non-moving party cannot rest upon mere allegations or denials, but rather it "must present affirmative evidence . . . from which a jury might return a verdict in [its] favor." Liberty Lobby, 477 U.S. at 248 (citation omitted), 257. To establish a genuine issue, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. at 587 (citation omitted). If the non-moving party does not present evidence sufficient to establish a genuine issue of material fact, then the moving party is entitled to summary judgment. Nissan Fire, 210 F.3d at 1103.

At the summary judgment stage, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007); see also Liberty Lobby, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The court may not weigh the evidence or make credibility determinations. Id. Although the court may consider materials in the record not cited by the parties, the court is not obliged "'to scour the record in search of a genuine issue of triable fact,' and may [instead] 'rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.'" Simmons v. Navajo County, 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)).

## II. Plaintiff's Deliberate Indifference Claim

### A. Legal Standard

To maintain an Eighth Amendment claim for inadequate medical care under 42 U.S.C. § 1983, a plaintiff must demonstrate "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The Ninth Circuit uses a two-part test for deliberate indifference that comprises an objective and a subjective standard. Id. First, under the objective standard, the plaintiff must show a "serious medical need" exists by "demonstrating that 'failure to treat the injury or condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" Id. (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the

9

16-cv-2276-H-NLS

existence of chronic and substantial pain." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled in part on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Second, under the subjective standard, the plaintiff must show that the defendant's response to the serious medical need was deliberately indifferent. Jett, 439 F.3d at 1096. More specifically, the plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. Moreover, the plaintiff can show a defendant is deliberately indifferent under this standard "only if the official 'knows of and disregards an excessive risk to inmate health and safety.'" Colwell, 439 F.3d at 1096 (quoting Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004)). Relatedly, "the plaintiff 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to the plaintiff's health.'" Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation omitted). The defendant must have done more than exercise "ordinary lack of due care"; the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Colwell, 439 F.3d at 1066 (quoting Famer v. Brennan, 511 U.S. 825, 835, 837 (1994)). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. State of Or., State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981)

"[D]eliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003) (citing Farmer v. Brennan, 511 U.S. at 842). Deliberate indifference may appear when defendants "deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which [defendant] prison physicians provide medical care." Jett, 439 F.3d at 1096 (quoting

McGuckin, 974 F.2d at 1060).

## B. Analysis

In their motion for summary judgment, Defendants argue that Plaintiff has not satisfied the subjective standard for deliberate indifference as to any of the Defendants. (See Doc. No. 29-1 at 11-15.) The Court examines Plaintiff's deliberate indifference claim as to each Defendant in turn.[5]

### 1. Deliberate Indifference Claim Against Dr. Luu

First, Defendants argue that Dr. Luu is entitled to summary judgment because Plaintiff has presented no evidence that Dr. Luu was aware of Plaintiff's complaint about the lump, "much less that he intentionally ignored it." (Doc. No. 29-1 at 12.) The records for Plaintiff's only appointment with Dr. Luu do not show that Plaintiff made any complaint regarding the lump or his groin, but rather that Dr. Luu asked about Plaintiff's earlier complaint of dizziness, reviewed lab results, and provided milk of magnesia for constipation, as Plaintiff requested. (Id.)

Having carefully considered the parties' arguments and evidence, the Court concludes that Plaintiff has not presented evidence sufficient to establish a genuine issue of material fact as to whether Dr. Luu was deliberately indifferent to Plaintiff's serious medical need. The records for Plaintiff's appointment with Dr. Luu contain no mention of a lump-related complaint and indicate a normal abdominal examination. (See Feinberg Decl. Ex. 11 ("ABDOMEN: Soft. Bowel sounds present. Nontender, soft.").) Moreover, Plaintiff's only appointment with Dr. Luu took place on September 14, 2015. (See id.) Plaintiff has no specific memory of Dr. Luu. (Wolfe Decl. Ex. 4 at RT 50:8-9.) In sum, Plaintiff has not presented evidence that Dr. Luu had any knowledge of a lump. Accordingly, viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has not established a genuine issue of material fact as to whether

---

[5] Plaintiff agrees that summary judgment should be granted to Dr. Nayyar. (Doc. No. 32 at 9.) Accordingly, the Court grants summary judgment as to Dr. Nayyar.

Dr. Luu knew of and disregarded an excessive risk to Plaintiff's health and safety. Colwell, 439 F.3d at 1096. Thus, because Plaintiff has not established a genuine issue of material fact as to the subjective prong for deliberate indifference, summary judgment is appropriate as to Dr. Luu on this claim. See Jett, 439 F.3d at 1096.

### C. Deliberate Indifference Claim Against Drs. Canles and Deel

Defendants next argue that there is no evidence that Dr. Canles and Dr. Deel were deliberately indifferent to Plaintiff's serious medical need. (Doc. No. 29-1 at 11-13.) With respect to Dr. Deel, Defendants emphasize that Dr. Deel saw Plaintiff approximately five times between April 2015 and September 2015, and that, according to the medical records, Plaintiff did not raise a concern about a lump at any of these appointments. (Id. at 11.) Similarly, Plaintiff's only appointment with Dr. Canles shows that Dr. Canles examined a scar on Plaintiff's left groin that Plaintiff was concerned was a hernia. (Id. at 12-13.) Defendants contend that "[t]here is no evidence either that the scar Dr. Canles examined was in fact the mass that Plaintiff later had removed, or that Dr. Canles, by examining the scar and determining it was not a hernia, deliberately ignored a serious medical need." (Id. at 13.)

On February 2, 2015, Dr. Canles performed an examination of Plaintiff's abdomen, which Dr. Canles described as "[b]enign, soft, [and] obese." (Feinberg Decl. Ex. 6.) Dr. Canles reassured Plaintiff that a "[s]car on [Plaintiff's] left inguinal area from excision of an apparent lipoma" was not a hernia. (Id.) In his opposition brief, Plaintiff asserts that all the physician Defendants "ignored the growth" when they reported normal abdominal examinations. (Doc. No. 32 at 8.) But mere allegations in pleadings are not sufficient to raise a genuine issue of fact. See Matsushita, 475 U.S. at 586; Liberty Lobby, 477 U.S. at 256. Additionally, Plaintiff's expert does not opine regarding Plaintiff's treatment by Dr. Canles, specifically, but rather opines in conclusory fashion that "each defendant's conduct was below the standard of care with respect to the examination of Auld and treatment of his complaint." (Taylor Decl. ¶ 17.) But ordinary lack of due care or a difference of medical opinion is insufficient to show that a defendant was deliberately indifferent to the plaintiff's

serious medical need. See Franklin, 662 F.2d at 1344; Farmer, 511 U.S. at 835.

Moreover, there is no genuine dispute that Dr. Canles examined Plaintiff's abdomen and his left inguinal area and found nothing of concern. (Feinberg Decl. Ex. 6.) Based on this record, the Court concludes that Plaintiff has not established a genuine issue of material fact as to whether Dr. Canles purposefully failed to respond to Plaintiff's pain or medical need, see Jett, 439 F.3d at 1096, or that Dr. Canles knew of and disregarded an excessive risk to inmate health, see Colwell, 763 F.3d at 1066.

The Court concludes the same with respect to Dr. Deel. Plaintiff has no specific memory of being treated by Dr. Deel. (Wolfe Decl. Ex. 4 at RT 49: 19-20.) Dr. Deel saw Plaintiff on April 17, 2015, and on April 30, 2015, for complaints related to a shoulder injury, possible seizures, and chest pains. (Feinberg Decl. Ex. 7.) On May 21, 2015, Dr. Deel saw Plaintiff regarding shoulder and neck pain. (Id. Ex. 9.) On June 8, 2015, Dr. Deel saw Plaintiff regarding a complaint of a sore throat, congestion, and cough. (Id.) Finally, on September 11, 2015, Dr. Deel saw Plaintiff regarding dizziness and nausea. (Id. Ex. 11.) At each appointment, Dr. Deel documented her treatment of Plaintiff's chief complaint in the corresponding Medical Progress Note. (See id. Exs. 7, 9, 11.)

None of the Medical Progress Notes for Plaintiff's five appointments with Dr. Deel contains any mention of a lump-related complaint. The Medical Progress Notes show that, at each appointment, Dr. Deel performed an abdominal examination that yielded normal findings, such as "soft," "positive bowel sounds," and "nontender." (See Feinberg Decl. Exs. 7, 9, 11.) In light of the record and the law, Plaintiff has failed to raise a triable issue of material fact that, if resolved in his favor, would establish deliberate indifference. Estelle, 429 U.S. at 106. Thus, Plaintiff has not raised a genuine issue of material fact as to whether Dr. Deel purposefully failed to respond to Plaintiff's pain or medical need, see Jett, 439 F.3d at 1096, or that Dr. Deel knew of and disregarded an excessive risk to inmate health, see Colwell, 763 F.3d at 1066.

Viewing the evidence most favorably to Plaintiff, the Court concludes that summary judgment is appropriate as to both Dr. Canles and Dr. Deel, because Plaintiff has not

established a genuine issue of material fact as to whether either Doctor was deliberately indifferent to Plaintiff's serious medical need. See Jett, 439 F.3d at 1096.

### D. Deliberate Indifference Claim Against Nurse Boucher

Defendants also argue that Plaintiff has not raised a genuine issue of material fact as to whether Nurse Boucher was deliberately indifferent to a serious medical need. (Doc. No. 29-1 at 14.) The evidence, Defendants assert, shows that Nurse Boucher "in fact provided Plaintiff with treatment for his complaints." (Id.) The evidence does not establish that Nurse Boucher "appreciated that the skin irritation he examined was a serious medical concern" or "that he disregarded that concern," (Doc. No. 35 at 7.) Plaintiff disagrees.

Plaintiff was seen by Nurse Boucher on four occasions. First, on May 12, 2015, Plaintiff submitted a Form 7362 stating "Id [sic] like to see a doctor. I have a lump on my left lower side of my stomach." (Feinberg Decl. Ex. 8.) Nurse Boucher saw Plaintiff on May 15, 2015. (Id.) Examining Plaintiff three days later, Nurse Boucher did not find a lump on Plaintiff's lower left stomach; rather, he observed "skin irritation due to skin rubbing against skin," "slight erythema," and "risk for infection." (Id.) Nurse Boucher gave Plaintiff reassurance, prescribed a 10-day course of antibiotics, and advised Plaintiff to seek medical attention if he experienced increased pain, fever, redness, discharge, or swelling. (Id.) A few days later, on May 19, 2015, Nurse Boucher saw Plaintiff again because Plaintiff submitted a Form 7362 stating that he had bumped his head and it was bleeding. (Id.) Nurse Boucher's notes from his assessment of Plaintiff contain no mention of any complaint related to a lump. (Id.) Nurse Boucher gave Plaintiff reassurance and advised him to seek medical attention if he experienced redness, fever, bleeding, or any issue of concern. (Id.)

On June 14, 2015, Plaintiff submitted a Form 7362 requesting to see a physician due to "swelling in the groin area." (Id. Ex. 10.) Nurse Boucher saw Plaintiff two days later and wrote that Plaintiff was complaining of swelling on his left side under his "belly fold." (Id.) Nurse Boucher identified skin irritation on Plaintiff's left side, not in the groin area, caused by belly fat "hang[ing] over" and "mak[ing] a skin fold" with a "colloid like skin

14

growth on healed skin/scar from incident 1-2 yrs ago." (Id.)  Finally, on October 2, 2015, Plaintiff submitted a Form 7362 requesting treatment for a broken toenail. (Id. Ex. 11.) Nurse Boucher saw Plaintiff five days later, and his notes contain no mention of any complaint regarding a lump. (Id.)  Moreover, Nurse Boucher ordered Plaintiff to seek additional medical treatment if he experienced signs of infection, fever, discharge from his toenail, or any "acute distress."  (Id.)

Even considering Plaintiff's contentions concerning Nurse Boucher, the record does not support Plaintiff's claim for deliberate indifference. (See Feinberg Decl. ¶¶ 25–32.) In particular, Plaintiff has not presented evidence sufficient to establish a genuine fact issue as to whether Nurse Boucher chose a course of treatment that was "medically unacceptable under the circumstances" and that Nurse Boucher chose that course of treatment "in conscious disregard of an excessive risk to the plaintiff's health." See Hamby, 821 F.3d at 1092 (citation omitted).

When Plaintiff presented to Nurse Boucher with the complaint of a lump on the lower left side of his stomach, Nurse Boucher observed skin irritation, rather than a lump, and prescribed antibiotics to prevent infection.[6] (Feinberg Decl. Ex. 8.) Approximately one month later, Plaintiff was seen by Nurse Boucher after complaining of "swelling in the groin area." (Id. Ex. 10.) Nurse Boucher again observed skin irritation, which appeared to be caused by a "skin fold." (Id.) There is no evidence that Nurse Boucher found a lump on Plaintiff's left groin at any point during the examinations, or that the skin irritation Nurse Boucher observed on his stomach was related to Plaintiff's left groin cancer diagnosis.  In fact, when Plaintiff sought treatment for a lump in his left groin area on December 1, 2015, after his release from prison, Plaintiff told the emergency room doctor at the Valley Presbyterian Hospital that the lump had only been present "for the past two days." (Feinberg Decl. Ex. 12.)

---

[6] Plaintiff was also initially treated with antibiotics for his groin mass when he presented to the emergency room at the Valley Presbyterian Hospital after his release from custody.  (See Feinberg Decl. Ex. 12.)

Furthermore, Plaintiff's expert opines on the standard of care for a "painful non-healing groin lesion," but even if Nurse Boucher was in fact confronted with such a lesion, his conduct would not amount to deliberate indifference absent a showing that he consciously disregarded an excessive risk to Plaintiff's health. See Hamby, 821 F.3d at 1092 ("Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." (quoting Toguchi, 391 F.3d at 1060)). Opposing summary judgment, Plaintiff has not presented evidence that raises a genuine issue of material fact as to whether Nurse Boucher drew an inference that Plaintiff was at substantial risk of serious harm. Colwell, 763 F.3d at 1066. Accordingly, the Court concludes that Plaintiff has not established a genuine issue of material fact as to whether Nurse Boucher was deliberately indifferent to Plaintiff's serious medical need. Summary judgment is therefore appropriate on this claim.

### E. Qualified Immunity

Defendants also contend that qualified immunity shields each of them from liability for Plaintiff's deliberate indifference claim. (Doc. No. 29-1 at 15-17.) The Court does not reach this argument because the Court grants summary judgment to Dr. Luu, Dr. Canles, Dr. Nayyar, Dr. Deel, and Nurse Boucher on the basis that Plaintiff has not established a genuine issue of material fact as to whether any of them was deliberately indifferent to Plaintiff's serious medical need.

### III. Plaintiff's Negligence Claim

Defendants move for summary judgment on Plaintiff's professional negligence claim as well. (Doc. No. 29-1 at 17-20.) "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). Having granted summary judgment to Defendants on Plaintiff's Section 1983 claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining

claim for state law professional negligence. See 28 U.S.C. § 1367(c)(3) (providing that the district court may decline to exercise supplemental jurisdiction over a related state-law claim if "the district court has dismissed all claims over which it has original jurisdiction"). Accordingly, the Court dismisses Plaintiff's professional negligence claim without prejudice.

## **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment as to Dr. Deel, Dr. Luu, Dr. Canles, Dr. Nayyar, and Nurse Boucher on Plaintiff's Section 1983 claim for deliberate indifference. (Doc. No. 29.) The Court declines to exercise supplemental jurisdiction over Plaintiff's professional negligence claim and, accordingly, dismisses that claim without prejudice. As Plaintiff has no remaining claims, the Clerk is directed to close the case.

**IT IS SO ORDERED.**

DATED: February 7, 2018

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT